**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PERFORMANCE HR, LTD., INC.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ARCHWAY INSURANCE SERVICES** | : | |
| **LLC, ET AL.,** | : | |
| **Defendants** | : | **NO. 08-3432** |

**MEMORANDUM AND ORDER**

Gene E. K. Pratter, J.                                                      October 23, 2008

This case concerns the failed relationship of a staffing company and its insurance broker.

Performance HR, Ltd., Inc. ("Performance") alleges that its insurance broker, Archway Insurance

Services, LLC, and other related entities[1] failed to fulfill their duties to Performance and then

later interfered with Performance's attempts to secure insurance through another broker.[2]

The Archway Defendants move to dismiss the claims.  Specifically, they seek dismissal

of all claims against Archway Insurance Group, LLC, and Counts II and IV through XII[3] against

---

[1] Performance HR has asserted claims against Archway Insurance Services, LLC;
Archway Insurance Group, LLC; H. James Agnew; and Partners Specialty Group, Inc.

[2] The array of claims as characterized by Performance is: tortious interference with
contract (AIG policy) (Count I), tortious interference with contract (Performance HR clients)
(Count II), tortious interference with prospective business relationships (insurance carriers)
(Count III), tortious interference with prospective business relationships (Count IV), breach of
fiduciary duty (duty of loyalty and utmost good faith) (Count V), breach of fiduciary duty (duty
of good faith and fair dealing) (Count VI), breach of fiduciary duty (duty to act with strictest
integrity) (Count VII), breach of fiduciary duty (duty of full disclosure) (Count VIII),
disgorgement (Count IX), fraud (Count X), business disparagement (Count XI), negligent
misrepresentation (Count XII), and negligence (Count XIII).

[3] Defendants do not challenge Performance's claims for tortious interference with
contract (AIG policy) (Count I) or tortious interference with prospective business relationships

-1-

Archway Insurance Services, LLC and H. James Agnew.  Defendants argue that many of the claims are barred by the gist of the action doctrine or the economic loss doctrine, while others should be dismissed for failure to state a cognizable cause of action or for failure to plead with required specificity.  Defendants further assert that the Complaint offers no basis for liability of Archway Insurance Group, LLC.  Finally, Defendants seek to strike portions of the Complaint containing what they consider "gratuitous, unnecessary information."  Defendants' Motion to Dismiss and Strike ("Motion") at 26.  Performance opposes the Motion.

For the reasons set forth below, the Court will grant the Motion as to the claim for "disgorgement" (Count IX) and deny the Motion in all other respects.


## I.    FACTUAL BACKGROUND

Performance is a staffing company that, with two related entities,[4] hired Archway Insurance Services, LLC ("Archway")[5] as an insurance broker.  Performance worked with Defendant H. James Agnew to obtain workers' compensation insurance through AIG for itself and its related entities.  During the application process, Performance alleges that it provided

_____

(Count III).

[4] The two related entities are Total HR Employer Services, Inc., a staffing company that purchased 51% of the stock in Performance in March 2006, and ACEO, Inc., another company in which Total HR owned the outstanding stock.  These two companies are not parties to this action.

[5] Archway Insurance Group, LLC is also named as a defendant in this action. Performance explains in the Complaint that "[d]uring the course of the relationship, the identities of Archway Services and Archway Group were often used interchangeably, and are therefore referred to collectively herein as 'Archway.'" Compl. at 4 n.1.  Accordingly, this memorandum uses "Archway" to refer to both entities.

documentation to Archway indicating that workers' compensation insurance was needed for Performance and its related entities.  The insurance became effective in June 2006, and Performance paid $85,000 to Archway as a broker's fee.

After workers' compensation claims were being serviced and processed under the insurance policy, Performance learned that the policy did not specifically name it as an insured; rather, the policy named only its two related entities.  Performance alleges that Archway and Mr. Agnew represented to Performance that it was covered under the AIG policy, but then requested additional documentation regarding the three related entities, documentation Performance believed to be inaccurate.  Performance revised the documentation as instructed by Archway, and Archway then began issuing certificates of insurance referencing all three entities.

During this period, Performance began receiving notices from regulatory entities, including the State of New York.  The notices state that no documentation had been filed reflecting that Performance and its employees were covered by a workers' compensation policy. Performance determined that Archway had failed to file the appropriate documentation.  As a result, Performance was fined $50,000 by the State of New York and allegedly still faces additional regulatory exposures elsewhere.

Because of an increase in the number of employees covered by the workers' compensation policy, Performance and the two related entities asked AIG to perform an audit.  In March 2007, Archway demanded an emergency conference call with Performance, the related entities, and representatives of AIG.  Archway allegedly represented during the call that all issues with coverage had been resolved.  However, only weeks later, Archway demanded that Performance make an immediate payment of $2,566,630 in additional premiums and collateral.

Archway threatened to effectuate cancellation of all coverage if the payment was not made.

Performance agreed to pay the remainder of the $1.1 million premium as well as two additional payments of $733,315 each.  Performance made the premium payment of $1.1 million to Archway on March 28, 2007.  However, on April 9, 2007, AIG informed Performance that the policy would be canceled for non-payment.  Performance learned that Archway had not forwarded the $1.1 million premium payment to AIG.  AIG rescinded the cancellation only after confirming Performance's timely payment to Archway.

Performance asserts that during its relationship with Archway, Archway routinely withheld certificates of insurance, delaying compliance with workers' compensation laws for as long as 60 days.  As a result, some of Performance's customers withheld payments, and some terminated their business.  Accordingly, Performance and its related entities decided to change insurance brokers in May 2007.  Performance alleges that, in apparent retaliation, Archway began interfering with Performance's efforts to renew its workers' compensation program.  Archway and other Defendants released confidential financial and business information to insurers, made false statements to third parties about Performance and its related entities, and made duplicate submissions to insurers, a practice disfavored by the insurance industry.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon

-4-

which it rests," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (quoting Conley, 355 U.S. at 47).  While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65 (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.

-5-

1993).

### III.    DISCUSSION

#### A.    Dismissal of Counts II and IV for Alleging Interference with Plaintiff, Not Third Parties

In Counts II and IV of the Complaint, Performance asserts Tortious Interference with Contract and Tortious Interference with Prospective Business Relationships, respectively.  In response, Archway argues that these Counts should be dismissed because, according to Archway, the claims allege interference directed at Performance, not third parties.

Archway's challenge is premised on Restatement (Second) of Torts § 766A.  However, in considering tortious interference claims, Pennsylvania courts have not adopted § 766A.  Rather, Pennsylvania courts have adopted only Restatement (Second) of Torts § 766 which provides:

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

See, e.g., Nathanson v. Med. Coll. Of Pa., 926 F.2d 1368, 1388 (3d Cir. 1991).  The Third Circuit Court of Appeals also has held that while the Pennsylvania Supreme Court adopted § 766, it is unlikely the Pennsylvania courts would adopt § 766A.  Accordingly, our Court of Appeals has explicitly declined to apply § 766A in cases to be decided under Pennsylvania law. See Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto Ins. Co., 40 F.3d 63, 66 (3d Cir. 1994); Windsor Securities, Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 660 (3d Cir. 1993).

Even if Archway could properly invoke § 766A (which, as a legal matter, it cannot), it is plain that Performance *has* alleged interference directed at third parties, not merely offending actions directed only toward Performance itself.  The Complaint alleges that Archway's actions were aimed at inducing third parties to cease business relationships with Plaintiff or to refuse to enter into business relationships with Plaintiff in the first place.  See, e.g., Compl. ¶¶ 26-28. According to the Complaint, Archway's actions not only attempted to harm Performance in this fashion, but those actions were ultimately successful.  For example, after Archway failed to provide proper insurance certificates to state regulatory agencies, some of Performance's clients withheld payments, and others allegedly canceled their contracts with Performance. Compl. ¶ 21. The Complaint asserts that Archway interfered with Performance's ability to attract new clients by stating that Archway would ensure that Performance could not get insurance through any other broker.  Compl. ¶ 23.  All of these actions on the part of Archway were aimed at preventing third parties from doing business with Performance.  As a result, such activities fall within the scope of § 766 and are actionable.

Defendants' Motion to Dismiss is denied as to Counts II and IV.

### B.    Limits on Claims for Breach of Fiduciary Relationship (Counts V-VIII)

Archway asserts that all claims related to breach of fiduciary duty must be limited to include only allegations of actions which occurred during the parties' contractual relationship and, thus, cannot encompass actions that occurred after the termination of their relationship in May 2007.  Archway avers that most of the actions alleged in Counts V through VIII occurred after the

termination of the parties' contractual relationship.[6]  Archway argues that "[a]s these actions are alleged to have taken place after the termination of the relationship, there was no longer a confidential relationship, or a fiduciary duty arising as a matter of law, and the claims for breach of fiduciary duty relating to actions taking place after the termination of the relationship should be dismissed."  Motion at 10.

Archway looks to In re Schlag, 96 B.R. 597, 602 (Bankr. E.D. Pa. 1989), for support in this regard.  According to Archway, In re Schlag held that an attorney had not breached his fiduciary duty in a business relationship because the attorney-client relationship already had been terminated.  However, a closer reading of the opinion demonstrates that the issue in In re Schlag was whether an attorney had abused the attorney-client relationship in a business deal with former clients where the deal commenced after the parties' attorney-client relationship was terminated.

The Schlag court did not hold that the fiduciary duty that arose out of the earlier attorney-client relationship ceased upon the termination of the attorney-client relationship.  Rather, the court examined the parties' evolving relationship and course of dealings, and determined that the attorney had not breached a fiduciary duty, any ethical standards, or any disciplinary rules.  In re Schlag, 96 B.R. at 601-02.

"The scope of a fiduciary's duty of loyalty has not been closely defined in the jurisprudence of [the Pennsylvania Supreme Court], or of other courts for that matter."  Wareheime v. Wareheime, 761 A.2d 1138, 1143 (Pa. 2000).  In considering special confidential relationships,

---

[6] See, e.g., Compl. ¶¶ 38, 40, 42 ("Defendants breached this duty by the tortious and other actionable conduct identified herein, including, without limitation, their interference with existing and prospective contractual relationships with clients and insurance carriers, release of confidential information with the intent that such action harm Performance HR, and the failure to disclose unauthorized commission, thereby causing damages to Performance HR.")

the Pennsylvania Supreme Court held that:

> [t]he concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line.  See 9 Wigmore, Evidence, § 2053, at 364-366 (3d ed. 1940). The essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other. With this in mind, each case must be analyzed on its own facts.

In re Estate of Scott, 316 A.2d 883, 885 (Pa. 1974).  The courts have not imposed limits on when duties arising from fiduciary relationships end.  Accordingly, any fiduciary relationship must be analyzed on its own facts.

Performance notes that to accept Archway's argument on this issue would allow confidential information disclosed during a contractual relationship to be revealed by the fiduciary at an "arbitrary date" (i.e., whenever the relationship concluded as a temporal matter), thus, "totally undermin[ing] the concept of fiduciary duty in the first place."  Plaintiff's Response to Defendants' Motion ("Response") at 9.

Defendants have provided the Court with no judicial support for their argument that all fiduciary duty ended with the termination of the parties' contractual relationship.  It is at least premature to limit the claims for breach of fiduciary duty only to actions occurring within the duration of the contract.  Accordingly, the Court will not limit the temporal scope of Counts V-VII at this time.

### C.    Disgorgement as a Remedy, Not a Claim (Count IX)

Archway argues for dismissal of Count IX (Disgorgement) because disgorgement is an equitable remedy and not a claim upon which relief can be granted in the context presented in the pending Complaint.  Count IX states, "Performance HR is entitled to the equitable remedy of

disgorgement of all profits and compensation received by Archway *as a result of the breaches of fiduciary duty set forth herein, for which it now sues . . . .*" Compl. ¶ 45 (emphasis added).  By phrasing the claim in this manner, it is apparent that Performance is seeking disgorgement as a remedy for the Defendants' alleged breach of fiduciary duties.  Further, Performance also seeks "Disgorgement" in its Prayer for Relief.  See Compl. at 20.

"Although pled as a separate cause of action, disgorgement is actually 'an equitable remedy designed to deprive a wrongdoer of his unjust enrichment.'" Smith v. John Hancock Ins. Co., 2008 WL 4072585, at *6 (E.D. Pa. Sept. 2, 2008) (citing S.E.C. v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997)).  Including a separate claim for disgorgement is duplicative and unnecessary because Performance already has requested such a remedy in its Prayer for Relief. See Pet Quarters, Inc. v. Badian, 2007 U.S. Dist. LEXIS 24611, at *22 (E.D. Ark. March 30, 2007) (Disgorgement "is not a independent substantive legal claim.")  Because disgorgement is an equitable remedy requested elsewhere in the Complaint, and is not properly a separate cause of action, the Court will dismiss Count IX as to all Defendants.


### D.     Pleading Specificity for Fraud (Count X)

Archway argues that Performance's claim for fraud must be dismissed for failure to plead with requisite specificity.  Rule 9(b) of the Federal Rules of Civil Procedure provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The purpose of this heightened pleading requirement is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard

-10-

defendants against spurious charges of immoral and fraudulent behavior." <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984)).   A plaintiff "may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" <u>Id.</u> at 224 (quoting <u>Seville</u>, 742 F.2d at 791).  "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." <u>Id.</u> (citations omitted).

Under Rule 9(b), a plaintiff alleging fraud must plead:

(1) a specific false representation of material fact;
(2) knowledge by the person who made it of its falsity;
(3) ignorance of its falsity by the person to whom it was made;
(4) the intention that it should be acted upon; and
(5) that the plaintiff acted upon it to his damage.

<u>Sun Co., Inc. v. Badger Design & Constructors, Inc.</u>, 939 F. Supp. 365, 369 (E.D. Pa. 1996) (quoting <u>Shapiro v. UJB Fin. Corp.</u>, 964 F.2d 272, 284 (3d Cir. 1992)).  This "special kind of proximate cause requirement" requires a plaintiff to show that a "specific statement *caused* a specific harm." <u>Id.</u> (quoting <u>Hurt v. Philadelphia Hous. Auth.</u>, 806 F. Supp. 515, 530 n. 25 (E.D. Pa.1992) (emphasis in original)) "Plaintiff may not simply point to a bad result and allege fraud." <u>Id.</u> (quoting <u>In re Chambers Dev. Sec. Litig.</u>, 848 F. Supp. 602, 616 (W.D. Pa.1994)).  However, in certain situations, Rule 9(b)'s particularity requirement is relaxed.  <u>See In re Rockefeller Ctr. Props, Inc. Secs. Litig.</u>, 311 F. 3d 198, 216 (3d Cir. 2002) (relaxed pleading requirements when requisite factual information is peculiarly within the defendant's knowledge or control).

Archway argues that Performance has failed to allege fraud with the requisite

-11-

particularity required under Rule 9(b), in particular, because Performance (i) failed to identify who made the various misrepresentations alleged throughout the Complaint, (ii) failed to identify to whom such misrepresentations were made, and (iii) failed to identify, with specificity, the content of such statements or the date, place and time such statements were made.  Motion at 11-13. Defendants also argue that Performance has failed to allege that the fraud *caused* a specific harm, as required under Rule 9(b).  Id. at 14.

Performance contends that because many of the fraud allegations are based on information that is within Archway's exclusive control, the Court should relax the particularity rules.  With regard to the argument that Performance has failed to allege that the fraud *caused* a specific harm, Performance contends that this goes to the sufficiency of the evidence, not the sufficiency of a pleading and is therefore irrelevant to a Rule 12(b)(6) motion.  Finally, Performance asserts that Defendants have been given sufficient notice of the fraud claim under Rule 9(b).

Ultimately, whether fraud is sufficiently pled depends on whether a plaintiff injects precision and some measure of substantiation into their allegations of fraud.  Relevant portions of the Complaint, specifically ¶¶ 13-21, provide such precision.  Although Performance does not name specific individuals, Performance clearly identifies the Defendants as the group who made such misrepresentations and itself as the recipient of the misrepresentations.  Id.  See, e.g., Killian v. McCulloch, 850 F. Supp. 1239, 1254 (E.D. Pa. 1994) (finding that "the fact that Plaintiffs do not indicate which Defendant made each representation is not fatal to their claim. . . . it would be impossible for Plaintiffs to delineate which Defendant was responsible for which act prior to discovery.")

Furthermore, Performance repeatedly alleges in its Complaint that due to Defendants'

multiple misrepresentations with regard to Performance's ability to secure workers'
compensation, Performance has been damaged.  For example, Performance alleges that it was
fined approximately $50,000 by State of New York.  Compl. ¶ 15.

Although Performance does not specify every individual instance in which Defendants
allegedly passed fraudulent information to third-parties or every resulting element of damage, the
Complaint provides the requisite degree of particularity to further the purpose of Rule 9(b)'s
heightened pleading requirement.  Performance adequately puts Defendants on notice as to the
precise misconduct with which they are charged.  Accordingly, the Court will not dismiss Count
X.

> **E.**    **Dismissal Pursuant to the Gist of the Action Doctrine (Counts V-VIII, X, XII,
>            XIII)**

Defendants assert that Pennsylvania's "gist of the action" doctrine supports dismissal of
Counts X, XII, and XIII, and the portions of Counts V-VIII relating to conduct during the course
of the parties' relationship.

Under the "gist of the action" doctrine, a plaintiff is barred from recasting a breach of
contract claim[7] as a tort claim.  eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa.
Super. Ct. 2002).  The "gist of the action" doctrine bars tort claims:

(1) arising solely from a contract between the parties; (2) where the duties allegedly

---

[7] The Complaint does not include a specific claim for breach of contract.  As explained in
Binary Sematics, Ltd. v. Minitab, Inc., 2008 U.S. Dist. LEXIS 28602, at *32-33 (M.D. Pa. March
20, 2008), it "would be a strange result if plaintiff was not able to bring [claims] because of the
'Gist of the Action' doctrine when there is no breach of contract claim."  Neither party addressed
this concept, but the Court notes that it would be a compelling reason for denying the Motion.

breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract.

Id. at 19 (internal citations omitted).

"When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contact or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious." Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc., 123 F. Supp. 2d 826, 833 (E.D. Pa. 2000) (quoting Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999)). "[I]f the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based." Id. (cited with approval by Wilmington Fin., Inc. v. Am. One Fin., Inc., 2007 U.S. Dist. LEXIS 55738, at *6 (E.D. Pa. July 31, 2007)).

A court should be very cautious to consider dismissing a claim under the "gist of the action" doctrine, due in part to the rules allowing parties to plead multiple claims as alternative theories of liability. See Fed. R. Civ. P. 8(e)(2); see, e.g., Berger & Montague v. Scott & Scott, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001) (rejecting a challenge under the "gist of the action" doctrine and allowing a plaintiff to pursue claims for both breach of contract and conversion).

Archway asks the Court to consider the Fee Agreement between the parties in determining whether any of Performance's claims are barred by the "gist of the action" doctrine.  See Motion, Ex. B.  Archway argues that the fee agreement constitutes the contract from which Performance's

-14-

tort claims arise, and Archway specifically notes that the agreement states that the fee is for the "marketing, placement, and servicing" of the policies with AIG.  Motion at 17.  Archway argues that the agreement governs the parties' relationship and should be considered alongside the Motion. Alternatively, Defendants request that the Motion be converted into a Rule 56 motion.

Rule 12(d) precludes consideration of matters outside the pleadings absent conversion to a Rule 56 motion, except in limited circumstances.  Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  In limited circumstances, federal courts can consider attached documents; however, those circumstances are limited to "undisputedly authentic" documents upon which a plaintiff bases its claim or documents that are "integral to" or "explicitly relied upon" in a party's complaint. In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999) (citations omitted).  Essentially, in order to make its "gist of the action" argument, Archway needs to bootstrap into a central role in this case now an unspecified agreement upon which Performance itself did not base any of its claims.

Recognizing Archway's attempted gambit, Performance argues that Rule 12(d) does not allow for the consideration of the Fee Agreement at this time.  Performance argues that the document is not "undisputedly authentic."  The agreement does not contain all parties' signatures, but instead contains only one illegible signature.  See Motion, Ex. B.  In addition, the document sets forth only how to figure the broker fees; it describes in any detail neither the relationship between the parties nor any obligations arising from such relationship, and there is no evidence

-15-

that the Fee Agreement was the only agreement between the parties.[8]  Thus, the agreement is not

an "undisputedly authentic document" and is not "integral to" or "explicitly relied upon" in a

Performance's Complaint.  Indeed, the Fee Agreement is never mentioned in the Complaint.

Accordingly, Rule 12(d) precludes consideration of the Fee Agreement, and the Court will not

dismiss Performance's claims pursuant to the "gist of the action" doctrine.[9]

### F.       Dismissal of Archway Insurance Group, LLC as a Defendant

The Complaint directly mentions Archway Insurance Group, LLC only twice, first in

Paragraph 4, where Performance explains the Archway Insurance Group, LLC is a "Delaware

Limited Liability Company," and next in a footnote, which reads, "During the course of the

relationship, the identities of Archway Services and Archway Group were often used

interchangeably, and are therefore referred to collectively herein as 'Archway.'"  Compl. at 4 n.1.

Defendants argue that "the Agreement shows that the contract was between Archway

Services and Plaintiff.  Archway Group was not a party to, nor was it mentioned in the

Agreement."  Motion at 23.  Accordingly, Defendants assert that the Complaint contains no basis

---

[8] According to Performance, "the fee agreement, at most, defines the scope of
compensation that Defendants would receive in the circumstances described.  It is silent as to
Defendants' duties and obligation with respect to procurement of insurance, treatment of
confidential information or Archway's duties relative to Performance HR's business
relationships with third parties, and certainly does not have any effect relative to Defendant's
[sic] duties that exist outside any contract, such as the duty not to interfere in Performance HR's
business relationships."  Response at 15.

[9] The Court declines to consider Defendants' Motion as a motion for summary judgment
under Federal Rule of Civil Procedure 56.  Even if the Court were to consider the Fee
Agreement, at this point the agreement remains contested and, thus, could not form the basis for
granting summary judgment for Defendants.

for finding Archway Insurance Group, LLC liable.

Defendants rely on a case from the Middle District of Florida to support their position. See Veltmann v. Walpole Pharmacy, Inc., 928 F. Supp. 1161 (M.D. Fla. 1996).  Defendants quote an excerpt: "Plaintiffs' Complaint makes general allegations against all of the named defendants. The complaint fails to separate each alleged act by each defendant into individually numbered paragraphs.  It is virtually impossible to ascertain from the Complaint which defendant committed which alleged act."  Id. at 1164.

However, even this lone authority continues by noting that such a "defect in pleading would be enough to grant a motion to dismiss with leave to amend, or, more properly perhaps, grant a motion for more definite statement."  Id.  To dismiss the case, the Veltman court actually relied on the plaintiffs' lack of standing, failure to bring two of three claims within the statutory period, and general failure to state a claim, *not* the plaintiffs' failure to specify which allegations were being made against each defendant.  Id. at 1164-65.  Veltman is easily distinguishable from, and not useful in, the case at issue.

Of greater significance at this juncture, the Complaint alleges that during the parties' contractual relationship, the identities of Archway Insurance Group, LLC and Archway Insurance Services, LLC were used interchangeably.  See Compl. at 4 n.1.  Discovery will permit the parties to determine whether there is any legal significance to that allegation.

At this stage in the litigation, the Court will not dismiss Archway Group, LLP as a defendant.

G.      **Striking Portions of Paragraphs 3 and 4 of the Complaint**

Archway challenges two portions of the Complaint.  Paragraph 3 of the Complaint alleges, "Defendant Archway Insurance Services, LLC ("Archway Services") is a Delaware Limited Liability Company that forfeited its corporate charter on May 5, 2006, with its principal place of business in Plymouth Meeting, Pennsylvania." (emphasis added).  Paragraph 4 of the Complaint claims, "Defendant Archway Insurance Group, LLC ("Archway Group") is a Delaware Limited Liability Company, not in good standing with its state of incorporation, with its principal place of business in Plymouth Meeting, Pennsylvania."  (emphasis added).  Archway argues that the Court should strike the underlined portions of the Complaint because these portions "attempt, through gratuitous, unnecessary information, to impugn the defendants on irrelevant matters. . . not relevant to the issue at hand. . . and are prejudicial."  Motion at 26.

Federal Rule of Civil Procedure 12(f) states:

Motion to Strike.  The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
(1) on its own; or
(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

"The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting Bristol-Myers Squibb Co. v. Ivax Corp., 77 F. Supp. 2d 606, 619 (D.N.J. 2000)).  However, motions to strike are generally viewed with disfavor by the courts and "are often not granted if there is an absence of a showing of prejudice to the

-18-

moving party." Great W. Life Assuranc Co. v. Levithan, 834 F. Supp. 858, 864 (E.D. Pa. 1993).

Striking a pleading is a "drastic remedy" appropriate only when the grounds for striking are

"readily apparent from the face of the pleadings." Johnson v. Anhorn, 334 F. Supp. 2d 802, 809

(E.D. Pa. 2004) (citations omitted).

As Performance notes, Archway does not challenge the veracity of the statements at issue.

Performance avers that Archway simply does not like the pleadings.  Response at 21.  "The

information explains who Archway is and how it meets its corporate contractual and societal

responsibilities, and is not 'redundant, immaterial, impertinent, or scandalous matter.'" Id.

Because Archway has not provided evidence of real prejudice, the Court will not strike the

challenged portions from the Complaint.

**IV. CONCLUSION**

For the reasons discussed above, the Court will grant Defendants' Motion as to the claim

for "disgorgement" (Count IX) and deny the Motion in all other respects.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

-19-

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PERFORMANCE HR, LTD., INC.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ARCHWAY INSURANCE SERVICES** | : | |
| **LLC, ET AL.,** | : | |
| **Defendants** | : | **NO. 08-3432** |

## <u>ORDER</u>

AND NOW, this 23rd day of October 2008, upon consideration of Defendants' Motion to Dismiss and Strike (Doc. Nos. 9, 10) and Plaintiff's Response (Doc. No. 18), IT IS HEREBY ORDERED that the Motion is GRANTED as to the claim for "disgorgement" (Count IX) and DENIED in all other respects.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge